# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES LEBLANC**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 17-76-SDD-EWD**

**DISA GLOBAL SOLUTIONS, INC. ET AL.**


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 5, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMES LEBLANC                                  CIVIL ACTION

VERSUS                                         NO. 17-76-SDD-EWD

DISA GLOBAL SOLUTIONS, INC. ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand filed by James LeBlanc ("Plaintiff").[1]  The Motion to Remand is opposed.[2]  Also before the Court is a 12(b)(6) Motion to Dismiss, filed by Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians.[3]  The Motion to Dismiss is opposed.[4]

For the following reasons, the undersigned recommends[5] that the Motion to Remand be **DENIED** and that Plaintiff's claims against Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians be **DISMISSED without prejudice.**  It is further recommended that Plaintiff's request for fees under 28 U.S.C. § 1447(c) also be **DENIED.**  For the same reasons, it is also recommended that the 12(b)(6) Motion to Dismiss filed by Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians be **DENIED as moot.**

---

[1] R. Doc. 10.  Plaintiff has also filed a Motion to Stay, seeking a stay of these proceedings with respect to the motion to dismiss filed by defendant DISA Global Solutions, Inc. (R. Doc. 5) and the motion to dismiss filed by defendant University MRO, LLC (R. Doc. 7), pending the resolution of the Motion to Remand.  *See*, R. Doc. 13.

[2] R. Doc. 28.

[3] R. Doc. 21.  The Motion to Dismiss was referred to the undersigned Magistrate Judge on September 26, 2017.  R. Doc. 48.  The Court must first consider the Motion to Remand because "as long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself."  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.,* 818 F.3d 193, 209 (5th Cir. 2016) (emphasis in original).

[4] R. Doc. 35.

[5] The Fifth Circuit has held that, "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016).  As such, a report and recommendation, rather than a ruling, is being issued relative to the instant Motion.

**Factual and Procedural Background**

This is a civil action involving claims for damages allegedly sustained by Plaintiff as a result of a failed drug test conducted on behalf of his employer, Atlas Copco Rental, LLC, on February 26, 2016.  On or about February 3, 2017, Plaintiff filed a Petition for Damages in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, against DISA Global Solutions, Inc. ("DISA"), Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians ("STEP") and University MRO, LLC ("University"), alleging that DISA, STEP and University were negligent in conducting Plaintiff's drug test.[6]  Plaintiff asserts that on February 26, 2016, he submitted to the random drug test at STEP, where STEP employees collected a hair sample for testing.  Plaintiff alleges that the staff and employees at STEP did not inquire about or document the medications that Plaintiff was taking at the time of the drug test.

According to the Petition, Plaintiff's hair sample was tested by Psychemedics Laboratory ("Psychemedics"), which resulted in a "non-negative" finding of cocaine metabolites.[7]  Plaintiff asserts that Psychemedics submitted those results to University for evaluation and that Dr. Terri Hellings, M.D., a Medical Review Officer ("MRO") employed by University, interviewed Plaintiff regarding his test results.  Plaintiff claims that Dr. Hellings did not accept his explanation that the non-negative test result was due to Plaintiff's legally prescribed medications.[8]  Plaintiff contends that Dr. Hellings, acting on behalf of University, submitted a final report to DISA and Atlas, which resulted in DISA listing Plaintiff as "Inactive" in its work eligibility database, "preventing petitioner from working in his field and with his employer."[9]  As such, Plaintiff seeks damages for

---

[6] R. Doc. 1-1 at pp. 4-9.
[7] R. Doc. 1-1 at p. 5, ¶ 6.
[8] Plaintiff explains in the Petition that he underwent surgery on or about November 5, 2015, a result of which he was legally prescribed medications by Dr. Petrie.  R. Doc. 1-1 at p. 4, ¶ 3.
[9] R. Doc. 1-1 at p. 5, ¶ 9.

lost wages, loss of earning capacity, injury to his work reputation, loss of his business (Louisiana Lubricant Services, LLC), embarrassment, mental anguish, emotional distress and anxiety.[10]

On February 9, 2017, University and DISA (collectively, "Defendants") filed a Notice of Removal, asserting this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).[11]  Defendants allege that there is complete diversity because Plaintiff is a Louisiana citizen, DISA is a Delaware corporation with its principal place of business in Texas and University is a Delaware corporation with its principal place of business in Pennsylvania.  The Notice of Removal does not address the citizenship of STEP.  Instead, Defendants assert that removal is proper "because no party in interest properly joined and served as a defendant is a citizen of the State of Louisiana, the state in which this action was brought (a 'forum defendant')."[12]  Defendants also assert that, "No Defendants have been served," and that, "Federal courts across the country apply the removal statute's plain language to permit removal of an action prior to proper service of a forum defendant."[13]  Defendants further allege that, "Because no Defendants have been served, no consent is required to remove the State Court Action pursuant to 28 U.S.C. § 1446(b)."[14]  Defendants assert that it is facially apparent from the Petition that the amount in controversy exceeds $75,000 based upon the damages sought by Plaintiff.[15]

---

[10] R. Doc. 1-1 at p. 7, ¶ 14.

[11] R. Doc. 1 at ¶ 3.

[12] R. Doc. 1 at ¶ 16 (*citing* 28 U.S.C. § 1441(b)).

[13] R. Doc. 1 at ¶ 17 (citing *Carrs v. AVCO Corp*., Civ. A. No. 3:11-CV-3423-L, 2012 WL 1945629, at *3 (N.D. Tex. May 30, 2012) ("First, as the court previously stated, the meaning of the statute is clear. . . . ¶ The presence of an in-state or non-diverse defendant is not a problem of subject matter jurisdiction.") (internal quotation marks and citation omitted); *Munchel v. Wyeth LLC*, Civ. A. No. 12-906-LPS, 2012 WL 4050072, at *4 (D. Del. Sept. 11, 2012) ("[N]othing in the statute limits the opportunity to remove only to non-forum defendants"); *Hawkins v. Cottrell, Inc*., 785 F. Supp. 2d 1361, 1368 (N.D. Ga. 2011) (observing that the plain-meaning approach to the statute "appears to be the majority view" across jurisdictions)).

[14] R. Doc. 1 at ¶ 18 (citing *Humphries v. Elliott Co*., 760 F.3d 414, 417 (5th Cir. 2014) ("Notably, even when removal is effected pursuant to § 1441, only co-defendants who have been 'properly joined and served' must join in or consent to the removal." (*quoting* 28 U.S.C. § 1446(b)(2)(A))).

[15] R. Doc. 1 at ¶ 12.  On February 16, 2017, the undersigned issued a Notice and Order *sua sponte*, requiring the parties to file memoranda and supporting evidence regarding whether the amount in controversy requirement of 28 U.S.C. § 1332(a) is met.  R. Doc. 3.  Defendants filed their supplemental memorandum on February 27, 2017, asserting that

On March 8, 2017, Plaintiff filed the instant Motion to Remand, asserting that the Court

lacks subject matter jurisdiction because the parties are not completely diverse.[16]  Plaintiff points

out that the Notice of Removal, which was filed only six days after the Petition was filed in state

court, makes no mention of STEP or the fact that STEP is "a Louisiana LLC with all Louisiana

citizen members."[17]  Thus, Plaintiff claims that the Defendants' "snap removal" was improper.

Plaintiff further asserts that as of the date of the Motion to Remand, all defendants, including

STEP, have been served with the Petition.[18]  Because removal was improper, Plaintiff seeks

attorney's fees and costs incurred in filing the Motion to Remand.[19]

Two days later, on March 10, 2017, Defendants filed an Amended Notice of Removal and

Improper Joinder ("Amended Notice of Removal"), asserting that the Court has diversity

jurisdiction over this case because STEP was improperly joined as a defendant in this matter.[20]

On March 31, 2017, Plaintiff filed a Memorandum in Opposition to the Amended Notice of

Removal, asserting that STEP was properly joined as a defendant because STEP's failure to collect

information regarding Plaintiff's prescription medications "set off a chain of events which resulted

---

the amount in controversy exceeds $75,000 in this case because Plaintiff claims he lost his business, Louisiana Lubricant Services, LLC, which a commercial business data services company (Dun & Bradstreet) lists as having annual sales of $197,000 as of September 30, 2016.  R. Doc. 4 at ¶¶ 2-3 (*citing* R. Doc. 4-2 at p. 5).  Defendants further assert that Plaintiff seeks lost wages and that "workers in positions similar to Plaintiff's can make salaries ranging from roughly $40,000 to $50,000 per year."  R. Doc. 4 at ¶ 4.  These allegations are sufficient to show, by a preponderance of the evidence, that the amount in controversy is likely to exceed $75,000 in this case.

[16] R. Doc. 10.

[17] R. Doc. 10-1 at pp. 1-2.

[18] R. Doc. 10-1 at p. 4.

[19] R. Doc. 10-1 at p. 7.  Plaintiff does not allege that amount in controversy is lacking.

[20] R. Doc. 12.  Although Defendants did not seek leave to file the Amended Notice of Removal, leave was not required because the amendment was filed within the 30-day period for removal.  Courts in this Circuit have held that a removal petition may be amended freely within the 30-day period after the defendant's receipt, "through service or otherwise," of a copy of the complaint.  *Williams v. Boyd Racing LLC*, Civ. A. No. 2:15-cv-2673, 2016 WL 236993, at *2 (W.D. La. Jan. 19, 2016) (*quoting* 28 U.S.C. § 1446(b)) (citing *Mayers v. Connell*, 651 F.Supp. 273, 274 (M.D. La. 1986)). In the original Notice of Removal, Defendants allege that DISA received a copy of the Petition on February 8, 2017. R. Doc. 1 at p. 4.  The Amended Notice of Removal was filed on March 10, 2017, the 30th day after DISA received a copy of the Petition.  On April 21, 2017, the Amended Notice of Removal was substituted with Defendants' Second Substituted Amended Notice of Removal and Improper Joinder and Memorandum in Support ("Second Amended Notice of Removal") (R. Doc. 36-1), which adequately alleges the citizenship of the parties, as ordered by the Court. *See*, R. Docs. 18, 31, 34, 36, 37.

in plaintiff LeBlanc being listed as 'Inactive' in DISA's system and being locked out of plants and unable to perform his job."[21]

On March 29, 2017, Defendants filed a Response to Plaintiff's Motion to Remand,[22] re-asserting that removal was proper because STEP was improperly joined as a defendant.

On March 24, 2017, STEP filed the instant 12(b)(6) Motion to Dismiss, asserting that Plaintiff's negligence claim against STEP should be dismissed because Plaintiff has failed to allege any facts to establish that STEP owed him a duty or that STEP's actions caused Plaintiff's damages.[23]    In opposition, Plaintiff maintains that his Petition and his First Amended, Supplemental, and Restated Complaint ("Amended Complaint") allege sufficient facts to support his negligence claim against STEP.[24]

## Applicable Law and Analysis

### A.  Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)-(a)(1).[25]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").  The removal statute,

---

[21] R. Doc. 30 at pp. 3-5.
[22] R. Doc. 28.
[23] R. Doc. 21; *See*, R. Doc. 21-1 at pp. 3-4.
[24] R. Doc. 35.
[25] The parties do not dispute that the amount in controversy requirement is satisfied in this case.

28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).  The removing party has the burden of proving federal diversity jurisdiction.  *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).  Remand is proper if at any time the court lacks subject matter jurisdiction.  *See,* 28 U.S.C. § 1447(c).

### 1.  Removal Was Not Premature

In the Motion to Remand, Plaintiff asserts that Defendants' "snap removal" of this case only six days after the Petition was filed in state court was premature because the Notice of Removal was filed before any of the defendants had been served.  Plaintiff also asserts that removal was improper because the Notice of Removal does not address the fact that STEP is a forum defendant.  Defendants assert that the Motion to Remand was rendered moot by their Amended Notice of Removal,[26] which sought removal on different grounds from those argued in the original Notice of Removal.[27]  Defendants claim that in their Amended Notice of Removal they "withdrew their argument regarding complete diversity among the parties and instead argued that Plaintiff had improperly joined the non-diverse defendant, [STEP], that the Court could thus disregard STEP's citizenship, and that removal was proper on grounds that complete diversity existed with respect to the properly joined Defendants and Plaintiff."[28]

The original Notice of Removal was not prematurely filed in this case.  The Fifth Circuit has held that, "Generally, service of process is not an absolute prerequisite to removal."  *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000).  In *Delgado*, the Fifth Circuit explained that 28 U.S.C. § 1446(b), "expressly provides for removal of a civil action or proceeding within thirty

---

[26] R. Doc. 12.
[27] R. Doc. 28 at p. 2.
[28] R. Doc. 28 at p. 2 (*citing* R. Doc. 12 at pp. 3-11).

days after the receipt by the defendant, 'through service or otherwise, of a copy of an amended pleading . . . or other paper from which it may first be ascertained that the case is one which is or has become removable.'" *Id.* The Fifth Circuit further explained that, "We read § 1446(b) and its 'through service or otherwise' language as consciously reflecting a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served." *Id.* The *Delgado* court noted that in *Murphy Bros. v. Michetti Pipe Stringing*, "the Supreme Court found that mere receipt of a complaint unattended by any formal service did not trigger a defendant's time to remove a case from state court. But the decision did not address whether service was a prerequisite for a defendant to be able to remove a case." *Id.* (citing *Murphy Bros.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)). *See also*, *Armendariz v. East Laredo Home Place, Ltd.*, Civ. A. No. L-08-94, 2008 WL 4453120, at *1 (S.D. Tex. Sept. 29, 2008) (citing *Delgado* and concluding that, "[W]hile a defendant is not required to remove a case until formally served, a defendant is not prohibited from removing sooner."); *Porter v. Merck & Co.*, Civ. A. No. 4:03-CV-12-LN, 2003 WL 25506472, at *1 (S.D. Miss. June 17, 2003) ("[N]either this court, nor any court identified by plaintiff or of which this court is aware, has interpreted *Murphy Brothers* as precluding removal by a defendant *prior to* formal service of process.") (emphasis in original). Thus, Plaintiff's argument that removal was premature lacks merit.

### 2. Plaintiff's Argument Regarding "Snap Removal" Was Rendered Moot by the Amended Notice of Removal

With respect to Plaintiff's assertion that Defendants' "snap removal" was an improper attempt to circumvent the forum defendant rule in 28 U.S.C. § 1441(b)(2), Plaintiff's argument is now moot in light of the allegations of jurisdiction contained in the Second Amended Notice of

Removal.[29]  As previously discussed, the original Notice of Removal alleges that, "Consistent with 28 U.S.C. § 1441(b), this action is removable because no party in interest properly joined and served as a defendant is a citizen of the State of Louisiana, the state in which this action was brought (a 'forum defendant')."[30]  However, Defendants subsequently filed an Amended Notice of Removal (that was later substituted with the Second Amended Notice of Removal, as ordered by the Court), asserting that, "Defendants remove this case on the basis of this Court's original diversity jurisdiction under 28 U.S.C. § 1332(a) and on grounds that Defendant Our Lady of the Lake Ascension LLC d/b/a St. Elizabeth Physicians ('STEP') has been improperly joined in this action."[31]  Because the operative Notice of Removal in this case no longer asserts that removal is proper based upon the "properly joined and served" language of 28 U.S.C. § 1441(b)(2) and all of the defendants have been served, the Court will not address Plaintiff's arguments regarding "snap removal," which are now moot.

### B.  Improper Joinder

#### 1.  Improper Joinder Standard

The thrust of the Motion to Remand is that removal was improper because the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a), as Plaintiff and STEP are both Louisiana citizens.  Defendants, however, contend that STEP was improperly joined as a defendant to defeat subject matter jurisdiction and that STEP's citizenship should be disregarded for removal purposes.

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper.  *Travis v. Irby*, 326 F.3d 644, 649 (5th

---

[29] R. Doc. 12.
[30] R. Doc. 1 at ¶ 16.
[31] R. Doc. 12 at pp. 1-2.

Cir. 2003).  To meet its burden, the removing party must show (1) an actual fraud in the pleading of jurisdictional facts, or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Id*. at 646-47.  Here, the first method of proving improper joinder is not at issue because Defendants have not alleged actual fraud in the Petition.  Defendants instead argue that Plaintiff will be unable to establish several essential elements of his negligence claim against STEP, specifically the elements of duty, breach and causation.  As such, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 573-74 (5th Cir. 2004).

The Fifth Circuit has explained that to determine whether a plaintiff has a reasonable basis of recovery under state law, a court can resolve the issue in one of two ways.  *Smallwood*, 385 F.3d at 573.  "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id*.  (citations omitted).  However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id*.  (citation omitted).  Although the decision regarding the procedure necessary in a given case lies within the discretion of the district court, the Fifth Circuit has cautioned that, "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573-74.  The Fifth Circuit further advised that, "[T]he inability to make the

requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574.

## 2. The Parties' Arguments

Defendants assert that the only facts alleged in the Petition regarding STEP are that, "Petitioner submitted to the random drug screen on February 26, 2016 at the office of defendant St. Elizabeth Physicians, which screening included collecting a hair sample for testing. The staff and employees at St. Elizabeth Physicians did not inquire about nor report petitioner's current medications."[32] In the Amended Complaint, Plaintiff further asserts that:

> As a part of the procedure for collecting samples for a drug screening, defendant St. Elizabeth Physician employees filled out a form, attached hereto as Exhibit B, with petitioner's identifying information and information concerning the specimen collection. The second page of this form has spacing for the donor, the petitioner in this case, to list "any medications taken over the last few days." However, defendant St. Elizabeth Physician employees did not show petitioner the second page of this form nor did they ask petitioner about any medications taken.[33]

In both pleadings, Plaintiff alleges that STEP was negligent in (1) failing to identify and consider legally prescribed medications; (2) improperly collecting test samples; (3) failing to follow company policy and procedure; (4) failing to properly train employees; (5) failing to properly monitor employees; (6) failing to ensure the quality and integrity of the sample collected; (7) failing to ensure the quality and integrity of the report received; (8) failing to take steps necessary to protect Plaintiff's reputation upon notice of an integrity issue with the sample; and (9) failing to act with the required degree of care commensurate with the above described situation.[34]

---

[32] R. Doc. 1-1 at p. 5, ¶ 5.
[33] R. Doc. 44 at ¶ VIII.
[34] R. Doc. 1-1 at pp. 6-7, ¶ 12; R. Doc. 44 at ¶ XVII.

Defendants assert that the factual allegations in the Amended Complaint fail to provide any basis for the duty, breach or causation elements of Plaintiff's negligence claim against STEP.[35] Defendants argue that Plaintiff has failed to allege any duty on STEP's part to inquire into Plaintiff's medications or report them to some undisclosed person or entity. Plaintiff claims STEP had a duty to collect and report information regarding his medications because the back of the drug testing form included a section that instructs donors to, "write down any medications that you have taken over the last few days. You will want to refer to these notes if you are contacted by a Medical Review Officer to discuss the results of your drug test."[36] Defendants argue that the purpose of this section of the form is to help donors recall what medications they were taking at the time of the drug test if they are subsequently contacted by an MRO. Defendants also point out that Plaintiff has alleged that he: (1) remembered which medications he was taking at the time of the drug test when he was interviewed by Dr. Hellings, the MRO; (2) informed University of the medications he was taking; and (3) provided University with written medical records evidencing the medications he was taking.[37] Thus, Defendants assert that any alleged failure by STEP to direct Plaintiff's attention to the back of the drug testing form had no effect on Plaintiff's ability to recall, inform and supply University with a list of the medications he was taking at the time of the drug test.

Defendants further assert that to the extent STEP owed Plaintiff a duty, the scope of the particular risk in this case did not fall within the scope of that duty because there is no way that STEP could or should have known that its collection of a hair sample would eventually lead to DISA listing Plaintiff as "Inactive" in its work eligibility database.[38] Defendants point out that

---

[35] R. Doc. 12 at p. 9.
[36] R. Doc. 12 at p. 9 (*quoting* R. Doc. 14-3 at p. 2).
[37] *See*, R. Doc. 12-1 at p. 5, ¶ 7; R. Doc. 44 at ¶¶ X & XI.
[38] R. Doc. 12 at p. 10.

Plaintiff has not alleged that there was anything wrong with STEP's collection of his hair sample or that the results of the drug test were inaccurate. Defendants further assert that Plaintiff has not alleged any facts to show that if STEP had inquired about or reported Plaintiff's prescription medications, DISA would not have reported Plaintiff's status as "Inactive," which is the crux of Plaintiff's alleged damages. Defendants argue that by alleging the positive test results were accurate and caused by prescription medication, Plaintiff has not alleged that anything in the collection process, the only aspect of the test in which STEP was involved, caused his alleged damages.

Finally, Defendants assert that Plaintiff attempts to establish breach of a duty by using a laundry list of conclusory negligence allegations that STEP improperly collected test samples, failed to follow company procedure, failed to properly train and monitor employees and failed to ensure the integrity of the sample collected.[39] Defendants argue that Plaintiff has alleged no facts to support these allegations and that these conclusory statements of negligence have nothing to do with STEP's collection of Plaintiff's hair sample or Plaintiff's claims that the MRO should have changed his test results to "negative" based on his prescription medications and that DISA should have recorded Plaintiff as "Active" in its database. Defendants contend that Plaintiff will be unable to show that STEP breached any duty allegedly owed to Plaintiff because Plaintiff has alleged that the test results were accurate, but triggered by medication, thereby conceding that the hair sample was properly collected by STEP. Defendants maintain that Plaintiff's conclusory allegations of negligence are legally insufficient to establish a cause of action for negligence against STEP. Because Plaintiff's allegations, taken as true, cannot establish the elements of duty, breach or

---

[39] *See*, R. Doc. 12-1 at pp. 6-7, ¶ 12.

causation of Plaintiff's negligence claim against STEP, Defendants argue STEP was improperly joined as a defendant and its citizenship should be ignored for removal purposes.

Plaintiff asserts that STEP was properly joined as a defendant because STEP had a duty to properly collect his hair sample, which includes collecting relevant information from Plaintiff. Plaintiff claims that STEP breached that duty by not collecting or reporting information that would alter the test results, such as information regarding any legally prescribed medications that Plaintiff was taking around the time of the drug test. Plaintiff contends that discovery will show that the collection of this information is a common practice among technicians collecting samples for testing because it is foreseeable that the failure to properly collect the sample, including information regarding what the patient has ingested, may alter the results of the tests.[40] Plaintiff argues that by not collecting information regarding his legally prescribed medications, STEP failed to note an explanation for a non-negative or abnormal test result, which set off a chain of events that resulted in Plaintiff being listed as "Inactive" in DISA's work eligibility database. Plaintiff asserts that Defendants have offered no support for their assertion that STEP has no duty to collect information on a donor's legally prescribed medications. Thus, Plaintiff contends the Court must look to the Petition and the Amended Complaint and accept all well pleaded facts as true and correct and in the light most favorable to Plaintiff. Such review, Plaintiff argues, will reveal that Plaintiff has stated a claim against STEP and that the matter should be remanded because STEP was properly joined as a defendant and complete diversity is lacking.

### 3. DISA and University Have Met Their Heavy Burden of Proving STEP Was Improperly Joined

As discussed above, in order to meet their burden of proving that STEP was improperly joined as a defendant in this case, Defendants must show that Plaintiff has no possibility of

---

[40] R. Doc. 30 at p. 4.

recovery on his negligence claim against STEP. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004). Louisiana courts have adopted a duty-risk analysis to determine whether a plaintiff should prevail on a negligence claim brought under La. Civ. Code art. 2315. *Long v. State ex rel. Dep't of Transp. And Dev.*, 2004-0485, p. 101 (La. 6/29/05), 916 So.2d 87, 101 (citing *Perkins v. Entergy Corp.*, 2000-1372, (La. 3/23/01), 782 So.2d 606). Under the duty-risk analysis, a plaintiff must prove the following five elements: (1) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Long*, 2004-0485 at 21, 916 So.2d at 101.

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633 (citation omitted). "In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Id.* "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (citations omitted). Here, Plaintiff has not alleged any basis to support his assertion that STEP had a duty to inquire about and report the medications that Plaintiff was taking at the time of the drug test. Although not raised by either party, at least two Louisiana appellate courts have held that independent drug testing laboratories hired by an employer owe a duty of reasonable care to employees who are tested. *See, Smith v. Diamond Offshore Management Co.*, Civ. A. No. 03-2024, 2003 WL 23095586, at *7

(E.D. La. Dec. 23, 2003) (citing *Nehrenz v. Dunn*, 593 So.2d 915, 918 (La. App. 4 Cir. 1992);

*Lewis v. Aluminum Co. of America*, 588 So.2d 167, 170 (La. App. 4 Cir. 1991); *Elliott v.*

*Laboratory Specialists, Inc.*, 588 So.2d 175, 176 (La. App. 5 Cir. 1991)).  In *Nehrenz* and *Lewis*,

the Fourth Circuit Court of Appeal concluded that drug testing laboratories have a "duty to perform

the drug tests in a competent and non-negligent manner."  *See, Nehrenz*, 593 So.2d at 918; *Lewis*,

588 So.2d at 170.  The court in *Elliot* even went so far as to say that, "To suggest that LSI does

not owe Elliott a duty to analyze his body fluid in a scientifically reasonable manner is an abuse

of fundamental fairness and justice."  588 So.2d at 176.

However, these cases only address the duty owed with respect to the manner in which a

hair sample or bodily fluids are analyzed and tested by a drug testing laboratory.  The cases do not

address the duty owed by an entity like STEP, whose only involvement is the collection of a hair

sample for testing.  Plaintiff has not cited, nor has this Court found, any law or jurisprudence to

support Plaintiff's claim that the person or entity that collects a sample for drug testing owes a

duty of care to the person being tested.  Certainly, it would seem that STEP would owe a duty, for

example, to ensure that the proper sample is actually the one sent to the testing facility, *i.e.* that it

was actually Plaintiff's hair that was sent to be tested.  Plaintiff does not argue that STEP failed to

collect, maintain or transport the correct hair sample.  Instead, Plaintiff argues that STEP failed in

its duty to collect and report information regarding medications that Plaintiff was taking.  In

support of his argument, Plaintiff relies on the language of STEP's drug testing form.  The

language of the form, however, contradicts Plaintiff's position.  While STEP's drug testing form

includes a section where donors can write down any medications that they have taken in the days

leading up to the drug test, the form specifically states that, "You will want to refer to these notes

if you are contacted by a Medical Review Officer to discuss the results of your drug test."[41]  This language indicates that this section of the form is to be used by the donor in the event that he is subsequently interviewed by an MRO regarding his drug tests results.  There is no indication that any information provided in that section of the drug testing form is provided to, reviewed by or relied upon by anyone else, such as the drug testing laboratory (Psychemedics) or DISA.[42]

Even assuming, *arguendo*, that STEP had a duty to collect and report information regarding Plaintiff's medications and that STEP breached that duty by not instructing Plaintiff to write that information on the back of the drug testing form, Plaintiff has failed to allege sufficient facts to show that STEP's alleged breach caused Plaintiff's injuries.  "A party's conduct is a cause in fact of the harm if it was a substantial factor in bringing about the harm.  The act is a cause in fact in bringing about the injury when the harm would not have occurred without it."  *Bellanger v. Webre*, 2010-0720, p. 9 (La. App. 1 Cir. 5/6/11), 65 So.3d 201, 207.  "While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability."  *Id*. (citing *Toston v. Pardon*, 2003-1747, p. 11 (La. 4/23/04), 874 So.2d 791, 799).

Here, Plaintiff has not alleged sufficient facts to show that STEP's failure to collect and report information regarding his prescription medications was a "substantial factor" in causing him to be listed as "Inactive" in DISA's work eligibility database.  In the Amended Complaint, Plaintiff alleges that his hair sample was tested by Psychemedics and resulted in a "non-negative" finding of cocaine metabolites, which results were submitted to University for evaluation.[43]  Plaintiff

---

[41] R. Doc. 44-2 at p. 2.

[42] Further, there are specific requirements on the second page of STEP's drug testing form that indicate what the collector is required to do and Plaintiff does not allege that the collector failed to comply with any of those requirements.  *See,* R. Doc. 44-2 at p. 2.  Indeed, Plaintiff signed the drug testing form, which contains a consent acknowledging that the collection of the sample was done as stated.  *Id.* at p. 1.  The Court also notes that the instructions on the back of the drug testing form for the collector to complete the custody control form are clearly separate and distinct from the "Special Instructions for Donor" section upon which Plaintiff seeks to rely to establish a duty to report medication information.  *Id*. at p. 2.

[43] R. Doc. 44 at ¶ IX.

alleges that he was subsequently interviewed by Dr. Hellings, the MRO for University, and that Dr. Hellings "did not accept petitioner's explanation of legally prescribed medications for the non-negative finding."[44] Plaintiff asserts that, "On March 2, 2016, immediately after the telephone conversation, petitioner submitted a copy of the Medication Administration Record from [STEP] after his knee surgery as well as his pharmacy Prescription Profile, listing the legally prescribed and filled medications that had been taken by petitioner since the date of his surgery."[45] Plaintiff claims that Dr. Hellings, acting on behalf of University, submitted a final report to DISA and Plaintiff's employer, Atlas. Plaintiff claims that as a result of the "non-negative" test results, DISA listed Plaintiff as "Inactive" in its work eligibility database. Plaintiff further asserts that, "Defendant DISA was put on notice by petitioner that the non-negative results of the drug screening was a result of the legally prescribed medications taken as directed by his treating physician, Dr. Petrie, since petitioner's knee surgery, yet defendant DISA continued to list petitioner as 'INACTIVE.'"[46]

Based on the foregoing allegations, Plaintiff will be unable to show that STEP's failure to collect and report information regarding his prescription medications caused his injuries because Plaintiff concedes that University (through Dr. Hellings) had that information when it submitted a final report to DISA and Atlas and DISA had that information when it listed Plaintiff as "Inactive" in its work eligibility database. Because DISA listed (and continued to list) Plaintiff as "Inactive" despite receipt of information that Plaintiff claims should have been included on STEP's drug testing form, Plaintiff has not shown that STEP's failure to collect and report that information "was a substantial factor in bringing about the harm." *Bellanger*, 2010-0720 at 9, 65 So.3d at 207. In

---

[44] R. Doc. 44 at ¶ X.
[45] R. Doc. 44 at ¶ XI (*citing* R. Doc. 44-3).
[46] R. Doc. 44 at ¶ XIV.

other words, Plaintiff will be unable to show that but for STEP's failure to collect and report information regarding Plaintiff's prescription medications, Plaintiff would not have been listed as "Inactive" in DISA's work eligibility database.  *See, Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1991), *on reh'g* (May 28, 1992) ("Cause in fact is generally a 'but for' inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact.").  Thus, Plaintiff will be unable to establish the element of causation in his negligence claim against STEP.

Accordingly, Defendants have met their heavy burden of proving that STEP was improperly joined as a defendant because Plaintiff has failed to state a negligence claim against STEP under Louisiana law.  *See, Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 573 (5th Cir. 2004).  Since the Court has found that an objectively reasonable basis exists for removal in this case, there is no basis for granting Plaintiff's request for attorney's fees and costs, which should be denied.

Because the Court finds STEP was improperly joined as a defendant in this matter, STEP must be dismissed without prejudice.  *See, Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd*., 818 F.3d 193, 209 (5th Cir. 2016) ("When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice.") (emphasis in original).  As such, STEP's Motion to Dismiss should be denied as moot.  *Id.* at 210 ("[O]nce it determined that Mueller was improperly joined, the district court effectively dismissed IEVM's claims against him *without* prejudice.  We therefore remand to the district court with instructions to vacate its grant of Mueller's motion to dismiss his claims *with* prejudice: That motion should have been denied as moot.") (emphasis in original).

## Conclusion

Based on the foregoing, Defendants have met their burden of proving that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy likely exceeds $75,000. Defendants have shown that Plaintiff has no possibility of recovery against Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians ("STEP") under Louisiana's law of negligence. Thus, STEP was improperly joined as a defendant in this matter and its citizenship should be disregarded for removal purposes. There is complete diversity between Plaintiff and the remaining defendants, DISA and University, and the Court should retain subject matter jurisdiction over the action. Further, Plaintiff's claims against STEP should be dismissed without prejudice.[47]

## **RECOMMENDATION**

It is the recommendation of the Magistrate Judge that Plaintiff's Motion to Remand[48] should be **DENIED** and Plaintiff's claims against Our Lady of the Lake Ascension, LLC d/b/a St. Elizabeth Physicians should be **DISMISSED without prejudice**.[49] As the undersigned finds the basis for removal was proper, the Plaintiff's request for fees under 28 U.S.C. § 1447(c) should also be **DENIED.**

It is also the recommendation of the Magistrate Judge that STEP's 12(b)(6) Motion to Dismiss[50] be **DENIED as moot.**

---

[47] *See, Montoya v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 16-00005 (RCL), 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.") (citing *Int'l Energy Ventures Mgt., L.L.C.*, 818 F.3d at 210).
[48] R. Doc. 10.
[49] Plaintiff's Motion to Stay (R. Doc. 13) pending the resolution of the Motion to Remand should, therefore, be denied as moot.
[50] R. Doc. 21.

In the event this Report is adopted and Plaintiff's Motion to Remand is denied, the undersigned further recommends that this matter be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, on October 5, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**